UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISIDRO FERNANDEZ DELUNA, | 1:09-cv-01096-AWI-MJS (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| | [Doc. 1] |
| JAMES D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by David N. Sunada, Esq., of the California Office of the Attorney General.

I.  **BACKGROUND**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his 1985 conviction in Santa Clara County Superior Court for second degree murder with use of a firearm. (Pet., Ex. B, ECF No. 1 at 66-67.) Petitioner was sentenced to an indeterminate term of seventeen years to life. (Id.)

Petitioner's minimum eligible release date was August 17, 1996. (Pet. at 10.) From 1994 to 2007, Petitioner has had six parole suitability hearings.  He was found unsuitable for parole at each hearing.    His first four parole determinations hearings were held in 1994, 1996, 1998, and 2000; in each of those hearings he received a two year denial. On

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

-1-

1  March 27, 2002, he received a three year denial. Petitioner filed a state petition for habeas
2  corpus with regard to the 2002 denial.  The state trial court granted relief and the California
3  Court of Appeal, Sixth Appellate District affirmed the state court opinion in a reasoned
4  decision. In re DeLuna, 126 Cal.App.4th 585 (2005)[2]. Petitioner was ordered to have
5  another hearing, which occurred on April 27, 2005. Petitioner received a one year denial.
6  Nevertheless, Petitioner did not receive his sixth parole determination hearing until May 30,
7  2007, two years later. Petitioner was again denied parole at the May 30, 2007 hearing.

      In the instant petition, Petitioner does not challenge the validity of his conviction but presents two other claims. First, he challenges the Board of Parole Hearings' (Board) May 30, 2007 decision finding him unsuitable for release on parole.  He claims that his due process rights were violated because that decision was not supported by some evidence. Second, Petitioner claims that the actions of the Board serve to nullify and violate the terms of his plea agreement.

      On January 2, 2008, Petitioner filed a state petition for writ of habeas corpus in the Santa Clara County Superior Court challenging the Board's 2007 decision. (Answer, Ex. 1, ECF No. 12-1.) On March 17, 2008, the Superior Court denied the petition. (Id. at Ex. 2, ECF No. 12-4.) On April 9, 2008, Petitioner filed a state petition with the California Court of Appeals, Second Appellate District. (Id. at Ex. 3, ECF No. 12-5.) The petition was denied on October 10, 2008. (Id. at Ex. 5, ECF No. 12-10.)   Finally, Petitioner also filed a petition with the Supreme Court of California on November 13, 2008, which was denied on May 18, 2009. (Id. at Exs. 4, 6, ECF No. 12-8, 12-11.)

      Petitioner filed the instant petition for writ of habeas corpus on June 22, 2009. Respondent filed an answer to the petition on July 2, 2010, and Petitioner filed a traverse

---

[2]This Court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244 (9th Cir.1992). Accordingly, this Court takes judicial notice of the above-referenced decision.

on August 5, 2010.

## II.   STATEMENT OF FACTS[3]

On July 7, 1985, defendant, then age 30, and his friends argued with the victim and his friends in a restaurant bar in Morgan Hill. Defendant said he was challenged to fight, so he went outside, where the victim, Fernando Renteria, then age 41, hit defendant in the face once or twice without provocation. They all went back inside the bar and continued drinking. Defendant and his friends left.

Defendant retrieved a .22-caliber rifle and drove back to the bar. As Renteria was about to enter his own car, defendant drove up and both defendant and his passenger began shooting at Renteria. Renteria was shot in the right elbow. He fell down, got up, and challenged them to kill him. Renteria was shot in the face. Renteria walked through the parking lot, spitting blood and tooth fragments. Defendant followed him and fired a shot that struck a nearby gas pump. Renteria called for his brother and walked among wooden boxes in the parking lot. He was killed by a shot in the back that perforated his thoracic aorta and left lung. After this shot, Renteria ran up to the restaurant door and collapsed. Defendant drove off and was taken into custody later the same night. Defendant attributed the shooting to his intoxication...

On August 29, 1985, defendant pleaded guilty to second degree murder and admitted that he personally used a firearm. On October 11, 1985, pursuant to the plea agreement, defendant was committed to prison for the indeterminate term of 17 years (15 plus two for the firearm use) to life. Defendant's minimum eligible parole date was August 17, 1996.

## III.   DISCUSSION

### A.   Standard of Habeas Corpus Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

---

[3] This information is taken from In re DeLuna, 126 Cal.App.4th at 589-90, which in turn is taken from the original probation report.

Under the AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. 362, 375 n. 7, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1.     Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. 362, 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam). In Harrington v. Richter, the Court

-4-

further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

### 2.     Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion,"does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then

it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

B. **Application of Due Process to California Parole**

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals held that California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d 546, 561-563 (9th Cir. 2010); Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), *rev'd*, Swarthout v. Cooke, ___ U.S.___, 131 S. Ct. 859, 178 L. Ed. 2d 732, (Jan. 24, 2011). The Ninth Circuit instructed reviewing federal district courts to determine whether California's application of California's "some evidence" rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence. Hayward, 603 F.3d at 563; Pearson, 606 F.3d at 608.

On January 24, 2011, the Supreme Court issued a *per curiam* opinion in Swarthout v. Cooke, 131 S. Ct. 859. In Swarthout, the Supreme Court held that "the responsibility for assuring that the constitutionally adequate procedures governing California's parole system are properly applied rests with California courts, and is no part of the Ninth Circuit's business." Id. at 863. The federal habeas court's inquiry into whether a prisoner denied parole received due process is limited to determining whether the prisoner "was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied." Id. at 862, *citing*, Greenholtz v. Inmates of Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979). Review of the instant case reveals Petitioner was present at his parole hearing, was given an opportunity to be heard, and was provided a statement of reasons for the parole board's decision. (See Answer Ex. 1, Part C at 55-144, ECF No. 12-3.) According to the Supreme Court, this is "the beginning and the end of the federal habeas courts' inquiry into whether [the petitioner] received due process." Swarthout, 131 S. Ct. at 863. "The Constitution does not require more [process]." Greenholtz, 442 U.S. at 16.

Given the holding in Swarthout, this Court must and does conclude that Petitioner does not present cognizable claims with regard to substantive due process and

recommends that relief be denied and the claim be summarily dismissed.

### C.     Breach of Petitioner's Parole Agreement

Petitioner claims that the Board's 2007 decision violated his plea agreement as he is being incarcerated for a term greater than the regulatory suggested term for the offense.

In the last reasoned decision, the Santa Clara County Superior Court held that Petitioner's claim had already been resolved in In re DeLuna, 126 Cal.App.4th 585 (2005), and will not be reconsidered. The California Court of Appeal, Sixth Appellate District addressed Petitioner's claim as follows:

> A. The effect of the plea bargain
>
> In this case the Board notified the Santa Clara County District Attorney of the parole suitability hearing. (Pen. Code § 3042, subd. (a).) The Board appropriately considered the district attorney's appearance and opposition to parole. (Pen. Code, § 3046, subd. (c).) The trial court's order has "precluded" the Santa Clara County District Attorney "from opposing parole based on the gravity of the commitment offense." The trial court reasoned that the prosecutor is estopped by the 1985 plea bargain agreeing to second degree murder to now argue that defendant should be incarcerated longer "than the existing matrix designation" based on the nature of the commitment offense.
>
> We assume for the sake of discussion that a prosecutor who agrees in a plea bargain to a particular parole date should be bound by that agreement, whether actually authorized to enter it or not. (Brown v. Poole (9th Cir. 2003) 337 F.3d 1155, 1159–1161.) We also assume for the sake of discussion that the district attorney is a party to these habeas corpus proceedings. Nevertheless, we conclude that this part of the court's order is unauthorized as it lacks evidentiary support. We see nothing in the record indicating that the 1985 plea bargain included a promise by the prosecutor either that defendant would be released on parole at any specific time, that defendant would be released according to the regulatory matrix, or that the prosecutor would cease arguing on a given date that defendant's second degree murder was especially callous. Absent such evidence, defendant cannot establish that his continued incarceration is a breach of his bargain. The district attorney's office is not bound to honor a promise it did not make. (People v. Dickerson (2004) 122 Cal.App.4th 1374, 1386 [19 Cal. Rptr. 3d 545].)

In re DeLuna, 126 Cal. App. 4th at 598-599.

This Court takes judicial notice of the above-referenced decision. U.S. ex rel. Robinson Rancheria Citizens Council, 971 F.2d 244. It is well settled that a plea agreement is a contract that must be honored by the state. See Santobello v. New York, 404 U.S. 257,

-8-

262-63, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); Buckley v. Terhune, 441 F.3d 688 (9th Cir. 2006). In this case, however, Petitioner interprets his plea too broadly. The proper interpretation and effect of the agreement between the State of California and Petitioner is that Petitioner was to and did receive a sentence of seventeen years to life in exchange for his guilty plea. The agreement provided for a life sentence, with a possibility of parole at some point after he had served his minimum term. Under California law, there is no guarantee of parole after a specified period of time, only that a prisoner will be considered for parole and granted parole only if, in the exercise of the discretion of the Board applying factors specified by regulations, he or she is found suitable for parole. Although the plea colloquy is not included in the record before this Court, Petitioner does not allege that there was any promise, actual or implied, of when or under what terms or conditions he might be granted parole. The California court in addressing this issue did not find a promise in the plea proceedings regarding a specific time for Petitioner's release, nor does Petitioner presently argue that such an agreement exists.  Petitioner's sole argument is that he has served well beyond his minimum term, and beyond a recommended term discussed in regulations related to his offense. "A plea agreement violation claim depends upon the actual terms of the agreement, not the subjective understanding of the defendant . . . ." In re Honesto, 130 Cal. App. 4th 81, 29 Cal. Rptr.3d 653, 660 (Cal. App. 2005). Accordingly, the fact that Petitioner has, and continues to serve, a sentence longer than the minimum or recommended sentence is not a breach of the plea agreement.

The Court cannot say the decision of the Santa Clara County Superior Court in this case that denial of parole did not breach Petitioner's plea agreement was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Petitioner is not entitled to relief. 28 U.S.C. § 2254(d).

///

**IV.    CONCLUSION**

Petitioner is not entitled to habeas relief based on his claims that the 2007 Board hearing violated his substantive due process rights and breached his plea agreement. Accordingly, this Court recommends that the petition be denied.

## V.     **RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that Petitioner's application for a writ of habeas corpus be DENIED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   March 18, 2011                    /s/ *Michael J. Seng*
                                           UNITED STATES MAGISTRATE JUDGE